Harvey J. GORDON, Appellant,

v.

AETNA LIFE INSURANCE COMPANY.

No. 71-1022.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 20, 1971.

Decided Oct. 12, 1971.

Mr. Juan A. Del Real, Washington, D. C., with whom Mr. Harlan L. Weiss, Washington, D. C., was on the brief, for appellant.

Mr. James C. Eastman, with whom Messrs. Charles E. Pledger, Jr. and John F. Mahoney, Jr., Washington, D. C., were on the brief, for appellee.

Before ROBB and WILKEY, Circuit Judges, and DAVIES,* United States

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

District Judge for the District of North Dakota.

DAVIES, District Judge:

The plaintiff, Harvey J. Gordon, father of a mentally retarded son, is a Government employee and, as such, is insured under a group accident and health policy issued by the defendant Aetna Life Insurance Company, extending coverage for Civil Service employees and their dependents. The policy provides, in part, coverage for:

"Mental and nervous disorders. In addition to other covered services and supplies, charges for the following services, including group therapy and collateral visits with members of the patient's immediate family, are allowable expenses when rendered in accordance with specific instructions by a doctor specializing in neurosurgery or psychiatry who has charge of the overall psychiatric care of the patient:

●Day care in a qualified day care center

●Night care in a qualified night care center

●Services of a qualified psychologist

●Services of a psychiatric nurse (R.N.)

●Services of a qualified psychiatric social worker"

but excludes charges for:

"Custodial care. Custodial care is the provision of room and board—with or without routine nursing care, training in personal hygiene and other forms of self-care, or supervisory care by a doctor—for a person who is mentally or physically disabled as a result of retarded development or body infirmity and who is not under specific medical, surgical, or psychiatric treatment to reduce his disability and to enable him to live outside an institution providing custodial care. This exclusion applies even when the custodial care is provided by a hospital. However, if confinement in a hospital is required because of a concurrent condition (whether related or not) which does require medical or surgical treatment by a doctor, the difference between the normally allowable hospital expenses and the customary charge for custodial care will be considered as allowable expenses."

Anticipating the placing of his son under specialized residential care, Gordon inquired of the defendant as to coverage for expenses incurred in connection with possible institutionalization of his son at three designated institutions. The defendant replied, in part, that:

"The Devereaux School is most familiar to us since we pay a substantial amount of claims to them. It has been our experience that half of the monthly charge is covered as medical treatment, and half of the charge is not covered as education and training. Of the half that is covered, we pay 60% of that as room and board and 40% under other hospital services. So, in the final analysis, we pay about 40% of the total monthly charge.

"Each claim from the Woods School is handled separately depending on the treatment rendered each child. However, I would say that generally we pay about 50% of the total monthly charge.

"The Vineland School we know the least about. About the only fact we do know is that it is a covered institution, and that our benefits would be comparable to the Woods and Devereaux schools.

"So you can see from the above, Mr. Gordon, that the amounts we would pay on these three institutions are approximately the same, and I would not allow this factor to affect your decision on where to send your child. The pre-admission evaluations would be covered at all three schools."

Approximately five months later the defendant again contacted Gordon and informed him that:

"We have just received the results of the investigation of Vineland Training School by our Philadelphia office and

our Home Office in Hartford. The decision is, unlike the Devereaux Foundation and the Woods School, we will not be able to pay any of the room and board or educational charges. However, all expenses for medical and psychiatric treatment including prescription drugs, lab work, and X-rays would be covered expenses. Therefore, we would need a breakdown of the charges each month in order to determine the covered expenses."

Thereafter Gordon placed his son in Elwyn Institute, Elwyn, Pennsylvania, and filed a claim for all expenses incurred in connection with the services rendered therein to his son. The defendant rejected the claim, indicating that it failed to disclose a need for treatment of a medical or psychiatric nature.

Gordon then commenced an action in the District of Columbia Court of General Sessions (now Superior Court) to recover the expenses incurred as the result of his son's institutionalization, alleging that his son was suffering from a *nervous disorder*. Discovery proceedings directed to the defendant disclosed that the allegation had been denied upon the grounds that "mental retardation is not a nervous disorder"; that the son was an eligible dependent under the policy; and that certain of the expenses incurred might be allowable upon a proper showing. Relying on the theory that this information revealed a basis for the commencement of a class action on behalf of those Civil Service employees covered under the policy who had eligible dependents that were mentally retarded, the plaintiff secured a stay of the Court of General Sessions' action and instituted a class action, pursuant to Rule 23, Fed.R.Civ.P., in the United States District Court for the District of Columbia seeking, after amending the complaint to include the individual action of the plaintiff to recover $6,000 in expenses allegedly incurred as the result of relying on the defendant's representation and promise

that Vineland Training School was a covered institution, a declaratory judgment:

"1. That mental retardation is a *mental and nervous* disorder, as such term is used within the policy.

"2. That *where mental retardation exists, expenses incurred* by plaintiff Gordon and other members of the class *for treatment* rendered to eligible dependents (in accordance with specific instructions by a doctor specializing in neurosurgery or psychiatry, who has charge of the overall psychiatric care of the patient) *are allowable expenses* under the policy, when:

(a) Such treatment is rendered by a member of the healing arts specializing in such treatment; or

(b) Such treatment is rendered by a member of the healing arts at institutions specializing in such treatment.

"3. Such damages as will fully compensate plaintiff Gordon and other members of the class.

"4. Such other relief as the Court may deem just and proper." (Emphasis added.)

Plaintiff subsequently moved to amend the amended complaint to include as an additional party plaintiff the Pennsylvania Association for Retarded Children, Inc. and the defendant moved to dismiss the amended complaint.

In ruling on the respective motions the District Court (1) denied the motion of the plaintiff to further amend the first amended complaint; (2) granted the defendant's motion to dismiss the first amended complaint only insofar as the complaint sought to allege a class action on the grounds that the class action could not be maintained as the complaint failed to comply with Rule 23, Fed.R.Civ.P.; (3) denied the motion to dismiss insofar as it alleged the individual action of Harvey J. Gordon; and (4) certified the matter to the District of

Columbia Court of General Sessions on the grounds that it did not appear the first amended complaint would justify a judgment in excess of $10,000. It is from this order that the plaintiff has appealed.

The principal issue presented is whether the District Court properly dismissed that part of the complaint which sought to commence a class action.

The record discloses (1) that the plaintiff's son is an eligible dependent under the terms of the policy; (2) that plaintiff's son is suffering from mental retardation; (3) that plaintiff's son was placed in Elwyn Institute, an institution specializing in the care and treatment of children suffering from nervous disorders; (4) that the plaintiff submitted a claim to the defendant for the $100.00 admission fee to Elwyn Institute and for the first month's charge of $415.00; (5) (a) that the claim, as such, was denied by the defendant on the basis that mental retardation is not a nervous disorder and (b) that no coverage was afforded under the facts set out in the claim; and (6) that a portion of the claim might be allowable upon a proper showing.

It is plaintiff's contention that denial of his claim would warrant the conclusion that any claim submitted by a Civil Service employee covered under the policy who had eligible dependents who were mentally retarded for expenses allegedly incurred under the mental and nervous disorders portion of the policy would automatically be denied by defendant on the grounds that mental retardation is not a mental and nervous disorder. Such an assumption is not warranted.

█ The real issue revolves around whether the plaintiff has incurred allowable expenses on behalf of his son in accordance with specific instructions by a doctor specializing in neurosurgery or psychiatry who has charge of the overall psychiatric care of the patient (mental and nervous disorders coverage) or has incurred expenses on behalf of his son for one who is mentally or physically disabled as a result of retarded development or body infirmity and who is *not* under specific medical, surgical or psychiatric treatment to reduce his disability and to enable him to live outside an institution providing custodial care (custodial care exclusion). *This issue is obviously one of an individual nature and must be decided upon a case by case basis.*

One of the prerequisites to a class action under Rule 23 is that there be "(a) (2) questions of law or fact common to the class." Attempting to meet this requirement plaintiff seeks to have the issue decided on the basis that mental retardation *is* a mental and nervous disorder [1] and that the defendant's denial of his claim creates a question of fact common to the class. Assuming that the issue would be decided affirmatively, we must again return to the issue as first posed. It thus becomes apparent that the label (mental retardation or mental and nervous disorders) placed upon the eligible dependent is irrelevant. The plaintiff thus has failed to meet one of the prerequisites to a class action.

█ Neither has the plaintiff met the additional requirements set forth in Rule 23(b) (1) by showing that prosecution of individual actions by members of the alleged class would create a risk of (A) inconsistent or varying adjudications which would establish incompatible conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Nor has the plaintiff shown that the defendant has acted or refused to act on

---

1. No claim has ever been presented by the plaintiff, or denied by the defendant, either that mental retardation is a *mental and* nervous disorder, or that the care and services being received are or are not custodial care as defined in the exclusions portion of the policy.

grounds generally applicable to the alleged class, thereby complying with Rule 23(b) (2).[1] It necessarily follows that the class action portion of the amended complaint was properly dismissed.

In determining whether the Court below abused its discretion by certifying the individual action of Harvey J. Gordon to the District of Columbia Court of General Sessions, D.C.Code § 11–962 (1967), it would have been beneficial for the Court to have set forth reasons for its conclusion that it did not appear that the first amended complaint would justify a verdict in excess of $10,000, Hughes v. Pennsylvania Railroad Company, 133 U.S.App.D.C. 174, 409 F.2d 460 (1969). However, its decision does not appear to us to be arbitrary or an abuse of discretion. Hughes v. Pennsylvania Railroad Company, supra; Gray v. Evening Star Newspaper Company, 107 U.S.App.D.C. 292, 277 F.2d 91 (1960); Davis v. Peerless Insurance Co., 103 U.S.App.D.C. 125, 255 F.2d 534 (1958); Barnard v. Schneider, 100 U.S.App.D.C. 152, 243 F.2d 258 (1957).

Whether or not the Pennsylvania Association for Retarded Children would or would not have been a proper plaintiff, if this were a maintainable class action, is rendered moot by the disposition of this appeal.

Affirmed.

WILKEY, Circuit Judge (dissenting):

With all deference to my two colleagues, I must dissent simply because the majority opinion misses the primary issue presented by this appeal—whether or not mental retardation qualifies as a "nervous disorder" and thus falls within the "mental and nervous disorders" coverage of the policy[1]—and is deflected by a secondary issue—whether or not the appellant has incurred allowable expenses on behalf of his son in accordance with specific instructions by a doctor and which are not excluded as expenses merely for "custodial care."[2] Logically, this question of individual expense should follow only *after* the primary issue of coverage has been resolved.

## I.   The Class Action Issue

### A.

The appellant has a valid class action here since the determination of whether or not mental retardation qualifies as a "nervous disorder," and thus is covered by the "mental and nervous disorders" section of the policy, does not affect his individual action alone. The resolution of this issue is decisive on the coverage for *all* mentally retarded dependents of policyholders. There may be other issues in individual cases, particularly on the fact questions of expenses actually incurred, but *no* claimant can recover on the basis of mental retardation unless mental retardation is found to fall within the "mental and nervous disorders" coverage of the policy.

By its response to the appellant's written Interrogatory No. 1, that "[m]ental retardation is not a nervous disorder,"[3] Aetna denies appellant and all those similarly situated the opportunity of seeking to recover their expenses incurred in obtaining treatment for their mentally retarded dependents. The majority themselves recognize this as the basic ground for the denial of appellant's claim by Aetna:

The record discloses (1) that the plaintiff's [appellant's] son is an eligible dependent under the terms of the policy; (2) that plaintiff's son is suffering from *mental retardation*; (3) that plaintiff's son was placed in Elwyn Institute, an institution specializing in the care and treatment of children suffering from *nervous disorders*; (4) that the plaintiff submitted a claim to the defendant [Aetna] for the $100.00 admission fee to Elwyn Institute and for the first month's

1. Supp.Joint App., p. 38.

2. *Id.*, at 41.

3. *Id.*, at 53.

charge of $415.00; (5) (a) *that the claim, as such, was denied by the defendant on the basis that mental retardation is not a nervous disorder* and (b) that no coverage was afforded under the facts set out in the claim. * * * [4] [Emphasis added.]

Provision (5) (a), then, is the basic issue in this case, while provision (5) (b) can only be relevant if mental retardation *is* covered under the "mental and nervous disorders" section of the policy.

Aetna has tried to avoid a direct confrontation on this issue by claiming that the exclusion for "custodial care" expenses [5] applies here, that this particular child is merely receiving "custodial care," not specific treatment for mental retardation, and therefore that Aetna is liable only for certain nominal expenses covered under sections of the policy other than the "mental and nervous disorders" section. The effort of Aetna to escape liability for this individual child by urging the "custodial care" exclusion represents much more than an attempt simply to avoid reimbursing this particular appellant. If the "custodial care" exclusion is held to apply to mental retardation cases, then the dominant issue in every case will be the individual facts of whether the child is receiving specific treatment, the type of institution—and therefore this appellant has no valid grounds for a class action. Thus it was that Aetna's brief, and counsel's oral argument, attempted to place the issue on the detailed minutiae of this appellant's individual expenses and care, details which would obviously vary with every individual policyholder, and slide by the basic question of whether *any* policyholder can claim coverage under "mental and nervous disorders" for a mentally retarded dependent. Unfortunately, my two colleagues seem not to have perceived Aetna's finesse.

On the other hand, if mental retardation is found to lie within the "mental and nervous disorders" coverage of the policy, then the "custodial" versus non-"custodial care" exclusion issue would fade, if not disappear altogether, since under the "mental and nervous disorders" section, appellant and all others similarly situated are entitled to reimbursement for their expenses for, *inter alia*:

> *Mental and nervous disorders.* In addition to other covered services and supplies, charges for the following services * * * are allowable expenses * * *:
>
> —Day care in a qualified day care center
>
> —Night care in a qualified night care center. * * * [6]

I would hold, and the majority does not decide differently, that the exclusion of recovery under the policy for "custodial care" expenses *cannot* be held to exclude recovery of expenses for "day care in a qualified day care center" and "night care in a qualified night care center" as the equivalent of "custodial care." Both parties apparently recognize this, hence the effort by Aetna to avoid coverage under the "mental and nervous disorders" section of the policy. But whether or not the Elwyn Institute qualifies as a hospital and whether or not the appellant's son is getting purely "custodial

4. Majority opinion, p. 720.

5. Supp.Joint App., p. 41. "Custodial care" *is defined as follows*:

> *Custodial care.* Custodial care is the provision of room and board—with or without routine nursing care, training in personal hygiene and other forms of self-care, or supervisory care by a doctor—for a person who is mentally or physically disabled as a result of retarded development or body infirmity and who is not under specific medical, surgical, or psychiatric treatment to reduce his disability and to enable him to live outside an institution providing custodial care. This exclusion applies even when the custodial care is provided by a hospital. * * *

6. *Id.*, at 38. This is qualified as follows: [Such expenses] are allowable expenses when rendered in accordance with specific instructions by a doctor specializing in neurosurgery or psychiatry who has charge of the overall psychiatric care of the patient." (At 38.)

care" are thus not relevant issues at this stage, since *the question of payment or amounts owed to each individual can only arise after the individual is determined to have coverage.* This becomes evident from the argument of appellant's counsel in his rebuttal.[7]

The appellant originally filed his action as an individual action, since he did not realize that he had the grounds for a class action until after Aetna responded to his written Interrogatory No. 1. This response—that "[m]ental retardation is not a nervous disorder"—told appellant for the first time that if he were denied coverage for his expenses incurred in obtaining treatment for his son's mental retardation, then *all* other policyholders seeking reimbursement on similar grounds under the "mental and nervous disorders" section of the policy would likewise be denied coverage. This clearly suffices for appellant to bring a class action on his own behalf and on behalf of all other policyholders similarly situated.

## B.

The majority, while stating that the appellant's "assumption"—that denial of his claim here would mean denial of the claims of all those similarly situated on the grounds that mental retardation does not qualify under the "mental and nervous disorders" coverage—"is not warranted," observes:

The real issue revolves around whether the plaintiff [appellant] has incurred allowable expenses on behalf of his son in accordance with specific instructions by a doctor * * * for one who is mentally or physically disabled as a result of retarded development or body infirmity * * * This issue is obviously one of an individual nature and must be decided upon a case by case basis.[8]

A determination of this issue, which is of course of an individual nature, first requires, however, the resolution of another question, this one not of an "individual" nature. That is, if the appellant (and all those similarly situated) is to be able to attempt to recover his expenses incurred in the treatment of his son's mental retardation under the "mental and nervous disorders" section of the policy, by showing that such expenses were incurred in accordance with specific instructions by a doctor specializing in neurosurgery or psychiatry who has charge of the overall psychiatric care of his son, he must be able to make such allegations in the first place.

This, however, he cannot do here under the majority opinion's interpretation. Aetna, by its answer to the appellant's Interrogatory No. 1 below—that "[m]ental retardation is not a nervous disorder"[9]—blocks the appellant and all other policyholders similarly situated, who might seek to recover their ex-

7. Demonstrating the essential nature of this question of coverage at the start is the following, excerpted from the argument of appellant's counsel in his rebuttal:

THE COURT: Well, what you've alleged, Mr. del Real [appellant's counsel], is you've asked for the expenses incurred for treatment, to have a declaration that these expenses incurred are allowable expenses. You haven't specified where the expenses have been incurred or in what type institution. Presumably that is a matter for proof at trial. * * *

MR. DEL REAL: That is correct, Your Honor.

THE COURT: * * * if they fall within the allowable expenses including the recovery.

MR. DEL REAL: I agree.

THE COURT: What you've asked for is determination of whether or not they're covered.

MR. DEL REAL: Because it is the first question. In my mind, Your Honor, every other question follows. Every other question will follow that issue and that issue, I believe, supports the class action. * * *

8. Majority opinion, p. 720.

9. The majority opinion states that "[n]o claim has ever been presented by the plaintiff [appellant here], or denied by the defendant [appellee here], either that mental retardation is a *mental* [emphasis in original] and nervous disorder, or that the care and services being received are or are not custodial care as defined in the

penses under the "mental and nervous disorders" section of the policy, from showing that such expenses were incurred for treatment of mental retardation in accordance with specific instructions by a doctor specializing in neurosurgery or psychiatry who has charge of the overall psychiatric care of the patient.

At the same time as it denies the appellant's principal contention—that mental retardation qualifies under the "mental and nervous disorders" section of the policy—Aetna also seeks to avoid a resolution of this issue by labelling it as "irrelevant":

> This question [whether or not mental retardation qualifies for "mental and nervous disorders" coverage] is totally *irrelevant* [emphasis added] to recovery under the policy, for the phrase "mental and nervous disorders" is merely a general heading in the policy. The issue is not what the insurance company chose to title this section of the policy, but: has Harvey Gordon incurred expenses for the specific services provided for under this heading? Specifically, does Jeffrey Gordon (or any other member of the proposed class) receive "services of a qualified psychologist, services of a psychiatric nurse or services of a qualified psychiatric social worker" under the terms and conditions of the policy? [10]

However, by Aetna's own theory, and sustained by the majority here, this question could never be reached, since the appellant is dismissed at the start if mental retardation is held not to fall under the "mental and nervous disorders" coverage. Clearly then, both by denying and citing as "irrelevant" appellant's

primary contention that mental retardation qualifies under the "mental and nervous disorders" section of the policy, Aetna succeeds, with the majority's approval, in having appellant's case dismissed even before any proof has been offered.

The manner in which the contentions of the two parties have slid by on the oblique is illustrated by the Aetna brief here. In trying to evade the class action, Aetna states: "In the present case the duty is an individual contract duty dependent by its very nature upon the expenses incurred by each individual."[11] If we focus on hospital expenses, whether or not Elwyn Institute is a hospital, and whether or not "custodial care" is involved, then Aetna may be right. But if we focus on the question of whether or not mental retardation falls within the "mental and nervous disorders" coverage of the policy—*which is what Aetna said was its reason for denying coverage in answer to appellant's Interrogatory No. 1*—then obviously "the duty is a [group] contract duty" because the clause is contained in a large group policy.

The determination of this basic issue, which Aetna itself gave as its reason for denying coverage, will determine coverage not only for appellant's son but also for all other mentally retarded children of families covered by this group policy. Therefore, there is no individual contract duty here; there is instead a *group* contract duty, where the issue is coverage. This certainly gives the appellant a justifiable basis for bringing a class action, since there do exist, as required by Rule 23(a)(2) of the Federal Rules of Civil Procedure, "questions of law or fact common to the class."

---

exclusions portion of the policy." [Majority opinion, p. 720, n. 1.] The phrasing of the caption in the policy, however, is "[m]ental and nervous disorders," which is both conjunctive *and* plural. Thus, the disorder being treated need not be *both* mental and nervous to qualify under this section of the policy.

10. Brief for appellees [Aetna], pp. 6–7. Observe that Aetna does not mention here "day care in a qualified day care center" or "night care in a qualified night care center," which are specifically included expenses under the "mental and nervous disorders" coverage—and which almost undeniably appellant has incurred.

11. *Id.*, at 13.

## C.

Appellant also meets, contrary to the majority opinion's interpretation, the requirements of Rule 23(b) (1), since the prosecution of his individual action alone would create a risk of (A) inconsistent or varying adjudications which would establish incompatible standards of conduct for Aetna, and (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. In addition, the requirements of Rule 23(b) (2) are satisfied since the appellee has refused the appellant coverage under the "mental and nervous disorders" section of the policy on grounds generally applicable to the class—that "[m]ental retardation is not a nervous disorder," thereby giving rise to the necessity for declaratory relief for the entire class.

## II. Jurisdictional Requirement

### A.

Insofar as the other issues raised on this appeal are concerned, the remand to the District of Columbia Court of General Sessions (now the Superior Court) was erroneous since the appellant's respective claims, when aggregated, well exceeded the $10,000 minimum jurisdictional requirement for an individual action[12] and for a class action[13] in the District Court. Appellant's first claim, in Count I of his Amended Complaint, covered the expenses incurred in the treatment of his mentally retarded son. These were of an ongoing nature and thus, on the date of dismissal (31 December 1970), amounted to $9,636.16. However, as Aetna notes, the policy prescribes a coverage limitation of 80%, which would result in an amount in controversy of $7,708.93 (80% x $9,636.16). Aggregating this amount with appellant's claim under Count II of his Amended Complaint for $6,000.00 results in a total of $13,708.93, well above the jurisdictional minimum required for bringing an action in the District Court.

The $6,000.00 claim is not merely an alternate claim for reimbursement by the appellant of his expenses incurred in obtaining treatment and care for his son; rather, it represents damages due to the appellant for his reliance on Aetna's promise and representation of coverage under the policy, and subsequent breach thereof prior to the institutionalization of appellant's son.[14] As the appellant states in his Amended Complaint, the damages sought under Count II on the basis of a promissory estoppel theory consist of " * * * substantial expenses [incurred by appellant] in contacting and visiting institutions and in providing for the supervision, care and special schooling of his child *pending institutionalization* [emphasis added],

12. D.C.Code § 11–521 (1967); D.C.Code § 11–961 (1967).

13. The Supreme Court has observed in this regard:
> The traditional judicial interpretation under all of these statutes has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to set the jurisdictional amount requirement. *Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant * * *.* Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). [Emphasis added.]

Professor Moore notes that:
> In an action by a single plaintiff against a single defendant, it is quite well settled in the Federal Courts, that in order to make up the amount in controversy requirement, a plaintiff may aggregate all claims which under Federal Rule 18 can be joined. It is not necessary that each of the claims or even any one of them meet the requisite jurisdictional sum. It is sufficient if the value of the various claims when aggregated exceeds the jurisdictional minimum. (1 Moore's Federal Practice, ¶ 0.97 [1], pp. 882–883 [footnotes omitted].)

14. See Joint App., pp. 32–33.

which institutionalization was delayed, as a direct result of [Aetna's] actions, from January 1968 to May 1969, all to the damage of [appellant] in the amount of $6,000."[15] Thus, by aggregating this claim with the claim in Count I, the District Court's minimal jurisdictional requirement of $10,000.00 was satisfied.

Certification of this case by the District Court to the Court of General Sessions was therefore erroneous and constituted an abuse of discretion, since the appellant by aggregating his two claims was also claiming damages well in excess of the $10,000.00 jurisdictional ceiling imposed by statute on the Court of General Sessions.[16] The damages here were not of an uncertain nature but liquidated in form, and when aggregated were well above the $10,000.00 jurisdictional maximum of the Court of General Sessions.

### B.

The exception to certification provided by D.C.Code § 11–962 (1967) applies here since the principal relief being sought by appellant is partially equitable in nature—a declaratory judgment that mental retardation qualifies under the "mental and nervous disorders" section of the policy. This statute provides that all cases *except those seeking equitable relief* may be certified for trial to the Court of General Sessions, if the District Court finds to its satisfaction that the action will not justify a judgment in excess of $10,000.00.[17] Thus, the exercise of the District Court in certifying this case to the Court of General Sessions constituted an abuse of discretion and may be upset on appeal.[18]

### III. Joinder of the Pennsylvania Association of Retarded Children

The remaining issue raised by this appeal, whether or not the Pennsylvania Association of Retarded Children should be added as a party plaintiff, is within the discretion of the trial court and its refusal may be correct. Rule 23(a) of the Federal Rules of Civil Procedure provides in relevant part that "One or more *members* [emphasis added] of a class may sue or be sued as representative parties on behalf of [a class] * * *." While the Second Circuit in Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (1968), did consider that there can be exceptions to this requirement of membership in the class in order to sue or be sued in its behalf,[19] the rationale for

---

15. Amended Complaint, Count II, Joint App., pp. 27–28.

16. D.C.Code § 11–961 (1967) provides in pertinent part that:

   In addition to other jurisdiction conferred upon it by law, the District of Columbia Court of General Sessions has exclusive jurisdiction of civil actions, including civil actions against executors, administrators and other fiduciaries, in which the claimed value of personal property or the debt or damages claimed does not exceed the sum of $10,000, exclusive of interest and costs, as well as of crossclaims and counterclaims interposed in all actions over which it has jurisdiction, regardless of the amount involved.

17. D.C.Code § 11–962 (1967) provides that:

   In a civil action commenced in the United States District Court for the District of Columbia, *other than an action for equitable relief* [emphasis added] where it appears to the satis-

faction of the court at or subsequent to any pretrial hearing but prior to trial thereof that the action will not justify a judgment in excess of $10,000, the court may certify the action to the District of Columbia Court of General Sessions for trial. * * *

18. As this court observed in Davis v. Peerless Insurance Co., 103 U.S.App.D.C. 125, 127, 255 F.2d 534, 536 (1958):

   To be sure, the exercise of the trial court's discretion [in certifying a case here] normally will not be disturbed on appeal unless it is arbitrary, but it becomes arbitrary if that discretion has been exercised for an erroneous reason.

19. The court stated:

   We think that the reasons for requiring an individual plaintiff in a class action to be a member of the class do not necessarily preclude an association from representing a class where its *raison d'etre* is to represent the interests of that class. (395 F.2d 920, 937 (1968).)

such an exception does not necessarily apply here. The Second Circuit stated:

> We do not decide, however, whether the association plaintiffs have standing. The answer to that question depends on whether there is a compelling need to grant them standing in order that the constitutional rights of persons not immediately before the court might be vindicated. See NAACP v. State of Alabama ex rel. Patterson, 357 U.S. 449, 458–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). It appears to us that the individual plaintiffs can adequately represent the interests of all members of the relevant class, but we will not preclude the plaintiffs from trying to show to the District Court's satisfaction that it is only the association plaintiff which can perform this function.[20]

However, since there is a valid class action here, it would appear beneficial to the trial court to permit the Association to appear as amicus curiae. This, however, is within the discretion of the trial court.