William V. TRAPP, Ron Beaumont, Ken Northrup, Jim Salwei, Ann Wainwright, Gary Ferguson, Dwayne D. Semerad, Valdean Fuelling, Mark Balding, Robert J. Rensvold, Doug Brown, and Doug Logen, Individually and on behalf of all other persons similarly situated, Plaintiffs and Appellees.

v.

MADERA PACIFIC, INC., Forest Products Distributors, Inc., Distributive Management Services, Inc., and RFS, Inc., Defendants and Appellants.

No. 15096.

Supreme Court of South Dakota.

Argued April 21, 1986.

Decided June 25, 1986.

Robert L. Varilek, Rapid City, for plaintiffs and appellees.

Michael M. Hickey, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellants.

SABERS, Justice.

Employer appeals from trial court's certification of class action and award of bonus to employees on summary judgment. We reverse and remand.

### Statement of Facts

This is a class action brought by the current and former employees (employees) of Madera Pacific, Inc. (Madera), and its subsidiaries. The employees brought suit against Madera for its refusal to pay them a bonus equal to 3% of their respective earnings as stated in Madera's employee manual. The trial court granted employees a partial summary judgment and ordered Madera to pay them the total sum of $59,012.61.

Madera is a Delaware corporation engaged in the wholesale lumber and construction supply business. It operates in South Dakota and neighboring states. Madera and its subsidiaries operate on a fiscal year basis from December 1 to November 30.

At the Madera Board of Directors meeting on November 20, 1979, there was discussion of an employee benefit plan. Management pointed out that they had promised the employees some type of pension plan by December of that year. On February 15, 1980, the Board of Directors approved a pension plan. The minutes of the February 15th meeting included the following:

It was submitted to the Board that we offer the employees a *Pension Plan* and it was recommended that this plan be an IRA payable 60 days after year-end at the rate of 3% of the employee's compensation for the preceding fiscal year, subject to limitations and qualifications ...

Following some discussion, the pension plan as proposed passed unanimously by motion.

On March 1, 1980, Madera issued an employee manual that included Section XII entitled "Individual Retirement Accounts (IRAs)," which provided:

Madera Pacific, Inc. has received Board of Director approval for, and is in the process of, finalizing an Individual IRA program.

Known facts of the program are:

(1) A contribution equal to 3% of total compensation will be made to an employee's individual account within sixty (60) days of the close of the corporate fiscal year—November 30.

(2) This program will be retroactive to the fiscal year beginning December 1, 1979.

Further details will be issued at a later date.

On December 10, 1980, Madera issued a letter to "All Employees" announcing the implementation of an annual bonus plan effective December 1, 1979, and following the close of the corporate fiscal year. The payment was to be equal to 3% of compensation, paid within 60 days after the close of the fiscal year, and with the recommendation that it be used as a contribution to an individual retirement account.

On April 17, 1981, certain additions and modifications were made to the employee manual. Among them was a modification amending the former Section XII concerning IRAs, to the identical language of the December 10, 1980, letter.

On August 10, 1981, Madera's managing officers distributed a memo to all employees advising them that all personnel policies, benefits and rules were under review and subject to change as financial conditions warranted. This memo specifically stated that, "[I]t appears doubtful that a bonus will be paid at the end of the fiscal year, pursuant to Section XII of the Employee Manual. This matter will be reviewed again as the economic climate improves."

The original supply of employee manuals was exhausted in July of 1981, and no new manuals were prepared or issued. Madera's approval of an IRA Pension Plan on February 15, 1980, has never been reviewed, modified, rescinded or otherwise acted upon by the Board of Directors. No bonuses have been paid other than the one for the fiscal year ending November 30, 1980.

A hearing on the employees' motion to certify this matter as a class action was held on April 9, 1984. The trial court granted employees' motion for a class action and an order was filed on April 23, 1984.

## 1. WAS CLASS ACTION CERTIFICATION APPROPRIATE?

Madera argues that the trial court failed to apply the requisite criteria to certify this matter as a class action. In accordance with SDCL 15–6–23(a), one or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

(4) the representative parties will fairly and adequately protect the interests of the class ...

Our statute is identical to the comparable provision set forth in Rule 23 of the Federal Rules of Civil Procedure. Therefore, class actions are maintainable if the prerequisites of SDCL 15–6–23(a) are satisfied, and:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

SDCL 15–6–23(b).

■ Class actions serve an important function in our judicial system. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 560 (2nd Cir.1968). In deciding whether to allow a class action, a primary determination to be made is whether the class action is superior to, and not just as good as, other available methods for handling the controversy, and such a determination lies in an area where the trial court's discretion is paramount. *Rutledge v. Electric Hose & Rubber Company,* 511 F.2d 668, 673 (9th Cir.1975). The burden lies with the party seeking certification to demonstrate that the criteria of Rule 23 have been met. *Carr v. New York Stock Exchange, Inc.,* 414 F.Supp. 1292, 1304 (N.D.Cal.1976).

■ The named representatives were required to meet all of the requirements set forth in SDCL 15–6–23(a), and also fall within one of the subsections of SDCL 15–6–23(b), in order for this class suit to be actionable. *See: Eisen,* 391 F.2d at 561. It is now recognized that the failure of any one of the threshold requirements destroys the alleged class action. *Rutledge,* 511 F.2d at 673. On review of an order deny-

ing or granting a motion to maintain a class, the lower court may be reversed only for an abuse of discretion. *See: Weiss v. York Hospital,* 745 F.2d 786, 807 (3rd Cir. 1984), *cert denied,* —— U.S. ——, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

### (i) *Numerosity*

█ The first requirement is that the class be so numerous that joinder of all members is impracticable. While employees initially estimated the class to contain approximately 150 members, in reality, it consisted of 136 people; of these, 68 people excluded themselves, 15 affirmatively opted into the class, and 53 were automatically included. The evidence reflects that the majority of these individuals were known through Madera personnel records, and resided in the Rapid City area. Thus, Madera argues that joinder could have been effected with minimal effort and inconvenience. Although the *Carr* case indicates: "[W]here the number of class members is at best fairly small (i.e., approximately 100), plaintiffs must demonstrate additional reasons why joinder is impracticable[,]" 414 F.Supp. at 1304, we cannot conclude it constitutes an abuse of discretion here.

### (ii) *Commonality*

SDCL 15–6–23(a)(2) requires that there be questions of law or fact common to the class. However, not all questions of law or fact raised need be in common. *See: Weiss,* 745 F.2d at 808–809. This requirement is concerned with whether or not the particular issues in an action are individual in nature, and therefore, must be decided on a case-by-case basis. *Gordon v. Aetna Life Insurance Co.,* 467 F.2d 717, 720 (D.C. Cir.1971).

Madera asserts that the pivotal issue concerned here is the employment relationship between each individual employee and the company. Claiming that each of these relationships was unique, Madera states that not all of the named employees received an employee manual which contained the disputed bonus language; that certain of the employees were orally advised that no bonus would be paid, *see: Westlake v. Abrams,* 565 F.Supp. 1330, 1344 (N.D.Ga.1983) [Class action inappropriate where inherent questions of a highly individualized nature, such as oral misrepresentation, are present.]; that certain employees were hired during late 1982 and would never have been covered, or hired in reliance upon the policies described in the manual. (Madera states that these latter employees were hired under the employee benefits then in effect which did not include a bonus provision.)

Madera raises legitimate questions regarding the individual character of some of employees' claims.

### (iii) *Typicality*

SDCL 15–6–23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. "Obviously, this requirement is not met when the 'representative' plaintiff never had a claim of *any* type against *any* defendant." *La Mar v. H & B Novelty & Loan Company,* 489 F.2d 461, 465 (9th Cir.1973).

Madera argues the lack of typicality by using one of the named employees, Gary Ferguson (Ferguson), as an example. Ferguson was hired by Madera in June 1979, and terminated in October of 1981. Madera asserts that he received a bonus in 1980, and did not work any other fiscal year. Thus, Madera contends that Ferguson had no claim against Madera, and he cannot meet the typicality requirement. However, Ferguson may have a claim for part of 1981. His position might also be typical of other employees' positions as against Madera. It is not necessary that each of the employees' claims be absolute, only typical.

### (iv) *Adequacy of Representation*

The fourth and final part of the statute requires that the representative parties fairly and adequately protect the interests of the class. SDCL 15–6–23(a)(4).

Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally

able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class. *Weiss*, 745 F.2d at 811, quoting *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3rd Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d at 679 (1975).

■ The quality and experience of employees' counsel is conceded by Madera. However, they rely on many of the reasons stated above, i.e., that the employees were hired at different times when different bonus policies were in effect, that the disputed bonus policy was altered at various times, and that the employees received this information in various ways, to suggest the existence of conflicts between the class members. "Traditionally, courts have expressed particular concern for the adequacy of representation in a class suit because the judgment conclusively determines the rights of absent class members." *Eisen*, 391 F.2d at 562. Thus, a court must carefully scrutinize the adequacy of representation in all class actions. *Id.*, *see also: Rutledge*, 511 F.2d at 673. Despite Madera's claims of conflict, it certainly appears from this record that the representative parties will fairly and adequately protect the interests of all class members.

Although Madera raises substantial questions under SDCL 15-6-23(a)(1) and (2), we cannot say that it amounts to an abuse of discretion on the part of the trial court. *Weiss, supra.* Accordingly, all of the prerequisites of SDCL 15-6-23(a) are satisfied. In addition, we find that questions of law or fact common to the members of the class predominate over any questions affecting *only* individual members, *and* that a class action is *superior* to other available methods for the fair and efficient adjudication of this controversy. SDCL 15-6-23(b)(3).

**1.** The trial court stated:
The following are the material facts which are not at issue:
(1) Madera Pacific, Inc., is a corporation incorporated in the State of Delaware doing business in the State of South Dakota.
(2) On November 20, 1979, the Board of Directors of Madera Pacific, Inc., discussed an

## 2. WAS SUMMARY JUDGMENT APPROPRIATE?

Madera next argues that the trial court erred in disposing of this matter by summary judgment.

■ In summary judgment, the burden of proof is on the moving party to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. Summary judgment is an extreme remedy and is not intended as a substitute for a trial. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). Therefore, summary judgment is appropriate to dispose of legal, not factual questions. Our review of a trial court order granting summary judgment leads to an affirmance if any basis exists which supports the ruling. *Uken v. Sloat*, 296 N.W.2d 540, 542 (S.D.1980), *Maryland Cas. Co. v. Delzer*, 283 N.W.2d 244 (S.D.1979).

In summary judgment, the pleadings, affidavits, depositions and every reasonable inference arising therefrom must be viewed most favorably toward the nonmoving party. Moreover, the appellate court is not bound by the factual findings of the trial court. Instead, it must conduct an independent review of the record. *Hurney v. Locke*, 308 N.W.2d 764, 767 (S.D.1981).

The trial court found that there were no genuine issues of material fact and that the employees were entitled to judgment as a matter of law. In its memorandum opinion dated February 8, 1985, the trial court listed ten findings of fact "which are not at issue."[1] Thereafter, the court enunciated

employee benefit package which included a pension plan.
(3) On February 15, 1980, the Board of Directors had the following items for discussion:
It was submitted to the Board that we offer the employees a *Pension Plan* and it was recommended that this plan be an IRA payable after 60 days after year end at the rate of 3% of employee's total compensation for the preceding

the sole issue as: Whether the bonus listed in the employee handbook is part of the employment contract. The trial court concluded that it was and awarded partial summary judgment in favor of the employees.

Madera argues that the "material facts" not in dispute as found by the trial court are in many ways neither material nor settled and that there are many other facts more material to the other issues.

Madera also argues that some of the employees were hired before the bonus language was incorporated into the manual, and others were hired after the August 1981 letter was circulated and were orally told that there would be no bonus. Whether some of the employees relied on the bonus as an inducement to employment is unclear.

Madera further asserts that genuine issues of material fact existed with regard to whether or not employees were ever promised a bonus in the first instance, if so, whether there was consideration for bonuses; and whether promises of bonuses were later modified by words and actions of the parties.

Madera further argues that the trial court based its decision upon the deposition of Keith Danley, the chief executive officer of Madera Pacific. Danley was forced to resign in August of 1982, by Madera. Madera argues that Danley's credibility and objectivity could be seriously questioned but that they were never given the opportunity to fully develop those areas by way of cross-examination at trial.

Much of the Danley deposition is inconsistent with the sworn affidavits of Madera employees: Lee Cleveland, Beverly Binegar and Ron Doering. For example, Mr. Cleveland's affidavit specifically states that he and the other supervisors were informed that no bonuses would be paid in June 1981. Thereafter, Cleveland met with a number of employees under his supervision and specifically informed them that there would be a wage freeze, a freeze on overtime, and that no bonuses would be paid. Cleveland also would testify that at approximately the same time other managers met with their employees to inform them that there would be no bonuses. These manag-

fiscal year, subject to limitations and qualifications. Following discussion, Jay Jordan moved to accept the above plan as proposed. Paul Rhines seconded. Motion passes unanimously.

It was suggested that we engage our law firm to structure this *Pension Plan* to make sure that the law is properly adhered to. Amounts accrued on this plan are to be shown on the monthly financial report by ACCOUNTING.

The *Exec-U-Plan* discussion was delayed until market conditions improve. The new *Employee Manual* was presented to the Board for its review.

(4) Under the date of March 1, 1980, § XII of the employee's handbook was published and distributed which states in part,

Madera Pacific, Inc., has received board of director approval for, and is in the process of, finalizing an individual IRA program. Known facets of the program are:

1. A contribution equal to 3% of total compensation will be made to an employee's individual account within sixty (60) days of the close of the corporate fiscal year—November 30.

2. This program will be retroactive to the fiscal year beginning December 1, 1979.

Further details will be issued at a later date.

(5) The accounting department began accruing funds to be paid to the employees pursuant to the plan. This accrual continued until sometime during 1981 when the board of directors instructed the comptroller to discontinue the accrual.

(6) Prior to February 1981, Madera Pacific paid a bonus to qualified employees retroactive to December 1, 1979 using a formula which would eventually be incorporated in the employee's handbook.

(7) Defendants have not been paid bonuses from December 1980.

(8) On April 17, 1981, the employee manual was modified. The revision important to the instant case contained a section entitled "MPI bonus plan" encompassing the language of the December 10 memorandum concerning bonus payments to qualified employees.

(9) The board of directors have not subsequently rescinded, modified or changed the bonus plan as listed in the employee handbook.

(10) On August 10, 1981, Danley and Doering signed a bulletin which stated in part, "[a]t this time, it appears very doubtful that a bonus will be paid at the end of this fiscal year, pursuant to Section XII of the Employee Manual. This matter will be reviewed again as the economic climate improves."

**564**

ers included Alex Charlenow, Ron Doering, Joe Mustard and others.

■ Furthermore, the affidavit of Beverly Binegar, corporate secretary for Madera Pacific, clearly states that in the summer of 1981 all employees of Madera Pacific were advised that no bonus would be paid for the fiscal year 1981, and that the bonus plan described in the employee handbook was no longer effective. This evidence stands in marked contrast to the deposition of Keith Danley. Certainly, this constitutes a genuine issue of material fact which warrants a trial.

The affidavits of Lee Cleveland and Beverly Binegar established that many employees would not have received a handbook, would never have received or been promised a bonus, or would have been told that no bonus was to be paid. The trial court ignored this conflict by stating that "there was a handbook in existence ... and the formula or handbook was never changed by formal action of the Board of Directors." This deprived Madera of its right to a trial and to present all of its evidence. *See: Wilson*, 83 S.D. at 212, 157 N.W.2d at 21.

■ Summary judgment is not a substitute for trial when the claims asserted are not a sham or frivolous. To surmise that a party will not prevail at trial is not a sufficient basis to grant summary judgment on issues which are not shown to be sham, frivolous, or so unsubstantial that it is obvious that it would be futile to try them. *Id.* The remedy is authorized only when the movant is entitled to judgment as a matter of law because there are no issues of material fact. *Nemec v. Deering*, 350 N.W.2d 53, 55 (S.D.1984); *Caneva v. Miners and Merchants Bank*, 335 N.W.2d 339, 341 (S.D.1983).

We reverse and remand to the trial court for a trial.

All the Justices concur.