**James A. BAUER, Plaintiff and Appellant,**

v.

**AMERICAN FREIGHT SYSTEM, INC., Defendant and Appellee.**

No. 15809.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1987.

Decided April 20, 1988.

Wayne F. Gilbert of Banks, Johnson, Johnson, Colbath & Huffman, P.C., Rapid City, for plaintiff and appellant.

Michael M. Hickey of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee.

MILLER, Justice (on reassignment).

James Bauer (Bauer) brought this wrongful termination action against his employer, American Freight System, Inc., (American Freight) after he was terminated in November 1985. The trial court granted American Freight's summary judg-

ment motion and Bauer appeals. We affirm.

## FACTS

Since Bauer began his employment with American Freight in 1977 he transferred several times and had been a sales representative and sales manager. At the time he was terminated he was in the management level position of terminal manager/sales manager at the Rapid City, South Dakota terminal. He was within eighteen months of being fully vested in American Freight's Retirement Income Security Program. Bauer did not have an individual written employment contract with American Freight.

At the time of Bauer's termination American Freight had an employee manual that set out many personnel policies. The following sections of that manual are relevant in this appeal:

## CODE OF CONDUCT

Every organization must have standards for on-the-job behavior. Violation of the Company's Common sense rules of personal conduct which may result in disciplinary action or discharge include, but are not limited to, the following:

. . . .

5. Failure to perform assigned or required work satisfactorily.

6. Insubordination.

7. Excessive absence; habitual tardiness.

You are an employee of a company performing a public service. Any misconduct which reflects discredit upon you, also reflects discredit upon the Company.

## PUNCTUALITY

You will be penalized for tardiness through loss of pay. Tardiness, like absenteeism, detracts from your value as a member of a working team, and is a poor work habit. A record of excessive tardiness will be a factor in appraising your dependability and value to the company, and, after proper warning from your su-

pervisor, can result in termination of your employment.

### EMPLOYER EXPECTATIONS

. . . .

The relationship of the company with its employees is firmly based on the foundation of fair play and just and equitable dealings....

In June 1985, an American Freight employee observed Bauer's *company car* at a local pool hall during working hours over the course of the summer and fall. This employee and a co-worker began to keep a diary of the observations, which diary disclosed that Bauer was at the pool hall during working hours approximately thirty times in an eight-week period. They reported this to Bauer's supervisors who made further inquiries and who observed Bauer's vehicle at the pool hall during working hours during times he was supposed to be making sales calls. Later, when his supervisors met with Bauer he admitted to spending an "inordinate" amount of time at the pool hall during working hours and that he was not attending to company business.

Bauer was then fired. A form used by American Freight indicated Bauer was terminated for "poor work performance." In depositions, American Freight's management personnel characterized Bauer's conduct in a variety of ways including "not working," "abusing company time," "misuse of time," "poor work performance," "stealing time from the company," and "failing to properly fulfill his job responsibilities."

### ISSUES

Whether genuine material issues of fact arise over whether Bauer's employment at will was altered by the employee handbook and, if a contract was created, whether the contract was breached.

### SUMMARY JUDGMENT

Summary judgment is authorized only when the movant is entitled to judgment as a matter of law because there are no genuine issues of material fact. SDCL 15–6–56(c); *Trapp v. Madera Pacific, Inc.,* 390 N.W.2d 558, 564 (S.D.1986) *citing Nemec v. Deering,* 350 N.W.2d 53, 55 (S.D.1984); *Caneva v. Miners and Merchants Bank,* 335 N.W.2d 339, 341 (S.D. 1983). The burden is on the moving party to clearly show that there is no genuine issue of material fact, and the evidence must be viewed most favorably to the nonmoving party; thus, reasonable doubts should be resolved against the moving party. The remedy is extreme and it is not intended as a substitute for a trial. *Trapp,* 390 N.W.2d at 562; *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). When no genuine issue of material fact exists in a case, the legal questions may be properly decided by summary judgment. *Hamaker v. Kenwel–Jackson Mach., Inc.,* 387 N.W.2d 515 (S.D.1986). *See also* SDCL 15–6–56(c). Therefore, we affirm only if there are no genuine issues of material fact and the legal questions have been correctly decided. *Trapp, supra.* Here, the trial court was confronted with mixed questions of fact and law. Therefore, summary judgment was improper....

*Bego v. Gordon,* 407 N.W.2d 801, 803–4 (S.D.1987); *Groseth Intern., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159 (S.D.1987).

### EMPLOYEE HANDBOOK

Although Bauer's brief sets out numerous handbook provisions, he specifically relies on three promises contained in the handbook as part of the employment contract: (1) a promise to terminate for excessive tardiness only after proper warning from a supervisor; (2) disciplinary action or discharge would take place only after violation of certain enumerated "common sense rules of personal conduct;" and (3) the relationship of the company with its employees is firmly based on the foundation of fair play and just and equitable dealings.

A proper disposition of this case requires a close analysis of our last two cases dealing with this issue, i.e. *Osterkamp* and *Hopes, infra.* In *Osterkamp v. Alkota*

*Mfg. Inc.*, 332 N.W.2d 275 (S.D.1983), we reversed a termination of employment because the record clearly indicated that the required procedures for disciplinary action were not utilized. However, in *Osterkamp*, the employee handbook contained mandatory provisions, including procedural requirements, specific affirmations and specific endorsements of "corrective disciplinary" measures. Clearly under the facts in *Osterkamp*, the handbook was part of the employment contract.

At the other end of the spectrum is *Hopes v. Black Hills Power & Light*, 386 N.W.2d 490 (S.D.1986). In *Hopes*, we held that there existed an employment terminable at will because the company's performance appraisal procedure dealt only with work performance and employee development and had no termination provisions.

American Freight's handbook is more detailed than the one we considered in *Hopes*, yet it is substantially less explicit than the one dealt with in *Osterkamp*. It is merely a general information booklet (entitled "Your Company—General Information) which outlines employer expectations, enumerates a code of conduct, and provides an assortment of information regarding personnel matters and general company policies. There are no *mandatory* provisions and *no specified procedure*.

As in *Hopes*, there is no dispute that Bauer had no employment contract and there was no specified term of his employment. Although it contained a general policy statement regarding terminating employees for poor punctuality, the handbook of American Freight has no specific termination provisions and outlines no procedures for termination.

■ The alleged promise in American Freight's handbook about employee relations being based on "fair play and just and equitable dealings," is too general to confer any specific rights on which a breach of contract claim can be based. "General statements of policy [in a personnel handbook] do not meet the contractual requirement of an offer [sufficient to create an employment contract]." *Lewis v. Equitable Life Assurance Soc.*, 389 N.W.2d

876 (Minn.1986), *citing Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983); *see Hunt v. I.B.M. Mid American Employee's Federal Credit Union*, 384 N.W.2d 853, 857 fn. 8 (Minn.1986); *see also* L. Larson & P. Borowsky, *Unjust Dismissal*, § 8.02 fn. 9 (1986).

■ Nor does the second alleged promise based solely on the handbook's "Code of Conduct" provide any clear procedure for termination, as the provisions did in the *Osterkamp* handbook. Because the provisions in the code of conduct are a non-exclusive list of common sense rules of behavior that can lead to *disciplinary action or discharge*, they clearly preserve American Freight's right to discharge an employee-at-will. *Jones v. EG & G Idaho, Inc.*, 111 Idaho 591, 726 P.2d 703 (Idaho 1986); *Chin v. American Tel. & Tel. Co.*, 96 Misc. 2d 1070, 410 N.Y.S.2d 737 (1978). Moreover, the general termination provisions in the handbook do not contain any procedure for terminating an employee, unlike the very specific provisions applied in *Osterkamp*. See also, *Hopes, supra*.

It is immaterial whether Bauer was terminated for excessive or habitual tardiness, failure to satisfactorily perform assigned or required work, insubordination, excessive absence, or whatever. The handbook does not limit discharge to a just cause standard and does not contain any termination guidelines or procedures which American Freight states or agrees they will follow. It does not become part of any employment agreement nor does it alter Bauer's status as an employee at will.

Affirmed.

WUEST, C.J., MORGAN, J., and ANDERSON, Circuit Judge, concur.

SABERS, J., dissents.

ANDERSON, Circuit Judge, sitting for HENDERSON, J., disqualified.

SABERS, Justice (dissenting).

I respectfully dissent from the majority opinion's statement that it is immaterial whether Bauer was terminated for excessive or habitual tardiness or some other

reason. This court has held that where an employer's handbook specifies that an employee will not be discharged without just cause and the handbook positively details a procedure for termination which provides for warning notices, any employer violation of these provisions will support an action for breach of an employment contract. *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983).

Bauer asserts that the employee handbook contains a promise to terminate for excessive tardiness *only after* proper warning from a supervisor. Bauer received no warning. Therefore, on summary judgment he is entitled to the more favorable and more specific of conflicting provisions in the employee handbook.

### Conflict in Handbook Provisions

Employer's promise arises from two conflicting handbook provisions regarding the process for discharge based on tardiness. The "Punctuality" provision provides in relevant part, "... [E]xcessive tardiness, ... *after proper warning* from your supervisor, can result in termination of your employment." (emphasis added)

The "Code of Conduct" provisions, on the other hand, provide in relevant part, "Violation of the Company's common sense rules of personal conduct which *may* result in *disciplinary action or discharge include, but are not limited to,* the following: ... (4) Failure to perform assigned or required work satisfactorily[;] (5) Insubordination[;] (6) Excessive absence; habitual tardiness...." (emphasis added) Sections (4), (5), and (6) are the only ones remotely related to this case. *Id.* Thus, the "Punctuality" provision in the handbook says that excessive tardiness can result in termination *after proper warning,* while the "Code of Conduct" provision preserves the employment-at-will concept by saying that tardiness is one of several nonexclusive violations that *"may"* result in *"disciplinary action or discharge."* (emphasis added) *Chin v. American Tel. & Tel. Co.,* 96 Misc.2d 1070, 410 N.Y.S.2d 737 (1978).

Before we can determine whether American Freight violated any of the handbook provisions, we must determine which of these conflicting provisions are to be given effect—the one which preserves the at-will concept or the one which specifically provides for a warning before an employee can be terminated for tardiness. "[C]ourts have held that whether provisions of a personnel manual should be considered part of an employment contract is a matter for the jury, without finding it necessary to articulate a doctrinal basis for so holding." L. Larson & P. Borowsky, *Unjust Dismissal* § 8.02 (1987). However, the general rules of interpreting written contracts provide that if a contract must be interpreted from the writing itself and not from any disputed surrounding circumstances, the question is one of law for the court and not the jury. 3 Corbin, *Contracts* § 554 (1960); 4 *Williston on Contracts* § 616 (3d ed. 1961). In *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 856 (Minn.1986), the court held that where the employee manual was the only basis for the wrongful discharge action, the nature and effect of the manual was a question of construction for the court. *See also Johnston v. Panhandle Cooperative Ass'n,* 225 Neb. 732, 408 N.W.2d 261 (1987) (In a declaratory judgment action, the question of whether a written salary agreement and a handbook supported the existence of a "for-cause" employment contract was a question of law for the court); *Lewis v. Equitable Life Assurance Soc. of the U.S.,* 389 N.W.2d 876 (Minn.1986) (Simonett, J., and Coyne, J., dissenting in part and concurring in part, and Kelley, J., dissenting).

In Bauer's case the allegations of his complaint and the arguments in his briefs indicate that the sole basis for his cause of action was the handbook provisions. *Cf. Toussaint v. Blue Cross & Blue Shield of Mich.,* 408 Mich. 579, 292 N.W.2d 880 (1980) (Jury could conclude that employee would not be discharged without good cause, based on *oral* assurances of job security which were reinforced by a manual of personnel policies). Because the conflict in the provisions of American Freight's handbook arises solely from the written terms, the question of which provision controls is one of law for the court. *See Corbin, supra; Williston, supra.* If a

conflict exists between a specific provision and a general provision, the specific provision is to govern. *Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149 (S.D. 1986). Thus, the more specific provision here requires that before American Freight terminates an employee for tardiness, the employee must be given a warning.

Since the specific contract provision regarding tardiness controls, the next question to be resolved is whether this provision was applicable to the facts here, and whether the provision was breached. *See Toussaint, supra* (Having first resolved the question of whether a contract existed under which the employee could be terminated only for cause, the jury could then determine the reason for the discharge and whether the contract was breached). Resolution of the reason for Bauer's discharge is necessary in this case because if Bauer was terminated for tardiness without any warning, then the controlling handbook provision was violated. But if Bauer was terminated for some other reason under the "Code of Conduct" provisions then American Freight could discharge Bauer without warning. *See Johnston, supra.* "The jury is always permitted to determine the employer's true reason for discharging the employee." *Toussaint, supra* 292 N.W.2d at 896; *see also Khanna v. Microdata Corp.,* 170 Cal.App.3d 250, 215 Cal. Rptr. 860 (1985) (Reasons for termination are for the jury under California law which applies a covenant of good faith and fair dealing in employment contracts). The true reason for Bauer's discharge is a matter for the jury in this case, because the question may involve, among other things, consideration of the nature of Bauer's duties and the credibility of American Freight's management personnel, who claim a variety of other reasons for Bauer's discharge. Once the reason for Bauer's discharge is resolved, then the question of breach can finally be answered.

Therefore, the summary judgment should be reversed and remanded.