#27885-aff in pt, rev in pt & rem in pt-LSW
**2017 S.D. 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| THAD DUERRE; CLINT DUERRE;<br>ROBERT DUERRE; and LARON HERR, | Plaintiffs and Appellees, |
| v. | |
| KELLY R. HEPLER, in his official capacity as<br>Secretary of the State of South Dakota Game,<br>Fish and Parks Department; SOUTH DAKOTA<br>DEPARTMENT OF GAME, FISH AND PARKS;<br>STATE OF SOUTH DAKOTA; and a class of<br>individuals, similarly situated, who have used<br>or intend to use the bodies of water described<br>in this complaint without the permission of<br>the owners of the property which the waters lie, | Defendants and Appellants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
DAY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER
Judge

* * * *

| | |
|---|---|
| RONALD A. PARSONS, JR.<br>SHANNON R. FALON of<br>Johnson Janklow Abdallah,<br>  Reiter & Parsons LLP<br>Sioux Falls, South Dakota | |
| and | |
| JACK HIEB<br>ZACHARY W. PETERSON of<br>Richardson, Wyly, Wise<br>  Sauck & Hieb, LLP<br>Aberdeen, South Dakota | Attorneys for plaintiffs<br>and appellees. |

* * * *

ARGUED ON
NOVEMBER 8, 2016
OPINION FILED **03/15/17**

MARTY J. JACKLEY
Attorney General

ANN F. MINES BAILEY
Assistant Attorney General
RICHARD J. NEILL
Special Assistant Attorney General
Pierre, South Dakota

Attorneys for defendants
and appellants.

#27885

WILBUR, Justice

[¶1.] Multiple landowners in Day County, South Dakota brought suit against the South Dakota Department of Game, Fish and Parks (GF&P), Secretary Jeffrey Vonk, the State of South Dakota, and certain unnamed defendants for declaratory and injunctive relief concerning the public's right to use the waters and ice overlying the landowners' private property for recreational purposes. The circuit court granted the landowners' request to certify a defendant class to include individuals who have used or intend to use the floodwaters located on the landowners' property for recreational purposes. The court appointed the Secretary of GF&P as the class representative. The parties filed cross-motions for summary judgment. After a hearing, the circuit court entered declaratory and injunctive relief against the named and class defendants. Defendants appeal. We affirm in part, reverse in part, and remand.

## Background

[¶2.] Thad Duerre, Clint Duerre, Robert Duerre, and Laron Herr (Landowners) own land in Day County, South Dakota. In 1993, excessive rainfall submerged portions of their land. The submerged land includes Jesse Slough, also known as Jesse Lake, and Duerre Slough, also known as Duerre Lake. Jesse Slough comprises approximately 1,175 acres, and Duerre Slough comprises approximately 1,495 acres.

[¶3.] In *Parks v. Cooper*, we noted that, in the late 1800s, the United States Surveyor General's Office commissioned surveyors to survey bodies of water in South Dakota. *See* 2004 S.D. 27, ¶ 2, 676 N.W.2d 823, 824. "The 1868 instructions,

effective at the time the areas in dispute were surveyed, provided that if a body of water was: (a) 40 acres or less; or (b) shallow or likely in time to dry up or be greatly reduced by evaporation, drainage, or other causes, the surveyors should not draw meander lines around that body of water but should simply include the water body and its bed in their survey as part of the lands available for settlement." *Id.* ¶ 2. Although Duerre Slough and Jesse Slough are sizeable waters now, these sloughs did not meet the criteria to be considered meandered when originally surveyed. So the landowners own the lakebeds under the non-meandered sloughs. Nonetheless, in *Parks*, we held that all waters, including non-meandered waters, are public property. *See* 2004 S.D. 27, ¶ 46, 676 N.W.2d at 839.

[¶4.] According to the Landowners, the general public began to use the sloughs for recreational purposes in 2001. Members of the public would set up villages of ice shacks, drive their vehicles on the ice, camp on the ice and, according to the Landowners, fire guns, blare music, operate loud machinery, get drunk, litter, cookout, etc. The Landowners claimed that, on certain days in the spring and fall, over 200 boats would launch into the waters. In the winter, over 70 ice shacks and vehicles would be present. Although members of the public generally accessed the waters legally via county roads, the Landowners reported what they believed to be trespassing to GF&P. They claimed that GF&P responded that the public could use the waters so long as they entered the waters legally.

[¶5.] In August 2014, the Landowners brought suit for injunctive and declaratory relief against the GF&P, Secretary Vonk, the State of South Dakota, and individual defendants who have used or intend to use the floodwaters located

on the Landowners' property for recreational purposes. In April 2015, Secretary Kelly Hepler replaced Secretary Vonk, and the circuit court entered an order substituting Secretary Hepler for Secretary Vonk. The Landowners asked the circuit court to certify the defendant class as all people who enter or use, have entered or used, intend to enter or use, or encourage others to enter or use the bodies of water overlying the Landowners' private property. In response, the State argued that the Landowners did not meet their burden of proof to warrant certification under SDCL 15-6-23 (Rule 23).

[¶6.]     The court held a hearing and entered findings and conclusions and an order certifying a defendant class under Rule 23(a) and (b)(1). The court limited the certification "to declaratory and injunctive relief sought prohibiting public entrance and use of the water overlying the Plaintiffs' private property in the absence of Legislative authorization." The court identified the certified class as:

> All individuals who have entered or used, intend to enter or use, or have permitted others to enter or use the bodies of water that overlie private property owned by the Plaintiffs as detailed on Exhibits A and B to the Plaintiffs' Complaint for Declaratory and Injunctive Relief.

The court designated Secretary Hepler as the class representative.

[¶7.]     The parties filed cross-motions for summary judgment. The Landowners asked the circuit court to declare that, in the absence of legislative authorization, the State defendants, class members, and public have no legal authorization to enter or use the water and ice overlying the Landowners' private property. The Landowners also asked the circuit court to declare that the State defendants "may not adopt or enforce any policy allowing or encouraging members

of the public to enter or use nonmeandered bodies of water, including water or ice located on the Plaintiffs' private property, for recreational purposes including hunting and fishing." In regard to injunctive relief, the Landowners sought to enjoin the State defendants, the class, and members of the public from entering or using the water or ice overlying the Landowners' private property for recreational purposes without the Landowners' permission. And the Landowners requested that the court enjoin the State defendants "from encouraging or permitting the entry or use of bodies of water or ice on the Plaintiffs' private property . . . or adopting or in any way enforcing any policy allowing members of the general public to enter or use water or ice located on the Plaintiffs' private property for any recreational purpose including hunting and fishing."

[¶8.] The State responded in its cross-motion for summary judgment that the Landowners have no right to exclude the general public from using the waters overlying private land because "all waters within South Dakota, not just those waters considered navigable under the federal test, are held in trust by the State for the public." *See Parks*, 2004 S.D. 27, ¶ 46, 676 N.W.2d at 839. The State also asserted that GF&P acted within its authority when it allowed the public to use the waters overlying the Landowners' private property so long as the public accessed the waters legally. The State relied on GF&P's and other State agencies' broad authority to manage the waters in South Dakota.

[¶9.] After a hearing, the circuit court granted the Landowners declaratory and injunctive relief. The court did not grant the broad relief requested by the

Landowners. In regard to the Landowners' request for declaratory relief, the court

held:

> (a) Pursuant to *Parks v. Cooper*, 2004 S.D. 27, 676 N.W.2d 823,
> in the absence of authorization from the Legislature,
> members of the general public are not legally authorized to
> enter or use any of the water or ice located on the Plaintiffs'
> private property for any recreational use such as hunting or
> fishing without the permission of the landowner.

The court denied any further declaratory relief. The court also entered a permanent

injunction in favor of the Landowners:

> (a) Prohibiting the Defendants, the certified Class, and members
> of the public from entering or using for any recreational
> purpose, including hunting and fishing, the bodies of water
> or ice located on the private property owned by the Plaintiffs
> without permission of the landowner.
>
> (b) Prohibiting the Department of Game, Fish and Parks and
> other Defendants from facilitating access to members of the
> public to enter or use the bodies of water or ice on the
> Plaintiffs' private property for any recreational purpose,
> including hunting and fishing, in the absence of permission
> from the landowner or authorization from the Legislature.

The court denied the Landowners further injunctive relief and denied the State's

cross-motion for summary judgment.

[¶10.] The State appeals asserting the following issues for our review:

> 1. Whether the circuit court erred in certifying the class,
>    naming Secretary Hepler as the class representative, and
>    compelling the Attorney General's Office to represent private
>    individuals.
>
> 2. Whether the circuit court erred in finding that the waters
>    held in public trust could not be used for recreational
>    purposes under the public trust doctrine and existing laws.
>
> 3. Whether the circuit court erred in granting an injunction
>    that prohibits the use of waters held in public trust for
>    recreation by the public without express authorization from

the Legislature but allows private landowners the right to use and control the access to those waters.

## Analysis

### 1. Defendant Class Certification

[¶11.] In *Trapp v. Madera Pacific, Inc.*, we recognized that "[c]lass actions serve an important function in our judicial system." 390 N.W.2d 558, 560 (S.D. 1986). A class action "both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." *Id.* A class may be certified if all the requirements of Rule 23(a) and at least one of the provisions of Rule 23(b) are met. *Id.*; *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 13, 836 N.W.2d 611, 617. The burden to demonstrate the elements necessary for class certification rests with the party seeking to certify the class. *Trapp*, 390 N.W.2d at 560. Because resolution of the State's argument against certification "'requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values of animate legal principles,'" we review the court's decision to certify the defendant class de novo. *Thurman*, 2013 S.D. 63, ¶ 12, 836 N.W.2d at 617 (quoting *McNeil v. Superior Siding, Inc.*, 2009 S.D. 68, ¶ 6, 771 N.W.2d 345, 347).

[¶12.] The State claims that the circuit court erred when it certified the class to include non-resident defendants over whom the South Dakota circuit court may not have jurisdiction. But the State cites no law to support the claim that jurisdiction over all class members is a prerequisite to the certification of a defendant class. Nor can we find any authority directly on point.

[¶13.]     A review of cases examining the certification of a defendant class reveals that courts have recognized that due process concerns may arise from the certification of a defendant class, particularly when a class action has the potential to impose liability against unnamed defendants or a class action could award a plaintiff damages against unnamed defendants. *See In re Integra Realty Res., Inc.* (*Integra Realty II*), 354 F.3d 1246, 1265 (10th Cir. 2004); *In re Integra Realty Res., Inc.* (*Integra Realty I*), 262 F.3d 1089, 1105 (10th Cir. 2001) ("defendant class actions create a special need to be attentive to the due process rights of absent parties"); *Bakalar v. Vavra*, 237 F.R.D. 59, 63-64 (S.D.N.Y. 2006) (discussing concerns relevant to certification of defendant classes); *Marchwinski v. Oliver Tyrone Corp.*, 81 F.R.D. 487, 489 (W.D. Pa. 1979) ("one may be required to pay a judgment without having had the opportunity to personally defend the suit"). Despite these concerns, courts approve certification because "Rule 23 recognizes the due process concomitants of this situation[.]" *United States v. Trucking Emp'rs, Inc.*, 72 F.R.D. 101, 105 (D.C. Cir. 1976); *see also Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 55 (E.D.N.Y. 2000). Under Rule 23, "the interests of such involuntary absent defendants [are] protected by a determination by the court that the interests of named and nonparty defendants coincide sufficiently that the substantive positions taken by the named defendants will protect the interests of the nonparty defendants." *Trucking Emp'rs*, 72 F.R.D. at 105-06.

[¶14.]     Courts have also approved certification of a defendant class although the court may not have personal jurisdiction over each class member so long as the court has "in personam jurisdiction over the named individual representative of the

class." *Calagaz v. Calhoon*, 309 F.2d 248, 253 (5th Cir. 1962) ("[i]ndividual members of the class are before the court only as far as they are class members"); *Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.*, 542 F. Supp. 2d 1054, 1065-66 (N.D. Cal. 2008) ("Personal jurisdiction need not be proper as to the unnamed members of a defendant class, so long as it is proper as to all named defendant members."); *Sherman v. Twp. High Sch. Dist. 214*, 540 F. Supp. 2d 985, 991 (N.D. Ill. 2008). This is in accord with the nature of a class action—an action in the absence of nearly all the class members. *Calagaz*, 309 F.2d at 254 ("all the members of the class are before the court in the person of their representatives"). To conclude otherwise and require "personal jurisdiction over all of the class members would in effect destroy the class action concept[.]" *Funliner of Alabama, L.L.C. v. Pickard*, 873 So. 2d 198, 213 (Ala. 2003). "[B]y definition there could be no 'absent' class members. All class members would have to be named and be before the court as a prerequisite to the prosecution of the action." *Id.*

[¶15.] Here, the circuit court has jurisdiction over the named defendants and the class representative. Also, the due process concerns associated with an action for damages or liability against unnamed defendants is not present here. This case concerns declaratory and injunctive relief against future action. We further note that before certifying the defendant class, the circuit court scrutinized whether the interests of representative party coincided with the interests of the member defendants such that the representative party would protect the interests of the nonparty defendants. The circuit court did not err when it certified the defendant class to include possible non-resident defendants.

[¶16.]     We next address whether the circuit court erred when it held that the Landowners established the elements necessary for certification.

### A. Rule 23(a) Elements

[¶17.]     Under Rule 23(a):

One or more members may sue or be sued as representative parties on behalf of all only if:

(1)  The class is so numerous that joinder of all members is impracticable;

(2)  There are questions of law or fact common to the class;

(3)  The claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4)  The representative parties will fairly and adequately protect the interests of the class; and

(5)  The suit is not against this state for the recovery of a tax imposed by chapter 10-39, 10-39A, 10-43, 10-44, 10-45, 10-46, 10-46A, 10-46B, or 10-52.

SDCL 15-6-23(a) (This case does not concern element (5).).

### 1. Numerosity

[¶18.]     In *Shangreuax v. Westby*, we said that the numerosity prong "requires that there be at least some evidence of the number of class members[.]"  281 N.W.2d 590, 593 (S.D. 1979).  The State claims this phrase means that the Landowners must present evidence identifying a specific number of potential class members.  On the contrary, when determining the numerosity factor for class certification, specific numbers are not required.  *See Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."); *Szczubelek v. Cendant Mtg. Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003) ("specific numbers are not required when 'common

sense' manifests that a reasonable estimate can be inferred from the facts"); *Scott v. Clark*, 61 F. Supp. 3d 569, 584 (W.D. Va. 2014). This is especially true when the relief sought is declaratory and injunctive. "Defining a class as consisting of all persons who have been or will be affected by the conduct charged to the defendants is entirely appropriate where only injunctive or declaratory relief is sought." *Rice v. Philadelphia*, 66 F.R.D. 17, 20 (E.D. Pa. 1974) (discussing certification under Rule 23(b)(2)).

[¶19.] Here, the Landowners' evidence supports the circuit court's conclusion that "[t]he members of the defendant class are so numerous that their individual joinder in a single action is not only impracticable, but impossible." The record contains pictures of several ice shacks located on the ice overlying the Landowners' property and at least 14 vehicles parked on the county road suggesting that the public accessed the waters and ice. These pictures capture isolated moments in time, and common sense would indicate that if the moments in time were repeated throughout the length of South Dakota's recreational seasons, the number of potential defendants is numerous. As the circuit court found, it would be impracticable for the Landowners "to serve and bring a lawsuit against all of the members of the public who have or might seek to use the water or ice on the Plaintiffs' submerged private property in this case."

## 2. Commonality

[¶20.] The State avers that the Landowners' claims are not sufficiently common because the Landowners' complaint alleges a takings cause of action against the State and a trespass cause of action against the nonparty defendants.

The commonality factor, however, does not require a class of clones, identical in all respects. *Trapp*, 390 N.W.2d at 561. Nor does this factor require commonality in "all questions of law or fact raised[.]" *Id.* "This requirement is concerned with whether or not the particular issues in an action are individual in nature, and therefore, must be decided on a case-by-case basis." *Id.* The test for commonality is qualitative, not quantitative. *See id.*; *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (even a single common question will do); *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997).

[¶21.]     The common question here is whether, absent legislative authorization, the public may enter or use the water that overlies the Landowners' private property for recreational purposes. This "common contention" is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). The circuit court did not err when it concluded that the common question of law "applies in exactly the same manner to all of the members of the defendant class" and that there are no individual questions of law or fact.

### 3. Typicality

[¶22.]     Like commonality, the claims and defenses for typicality need not be identical or absolute. *Trapp*, 390 N.W.2d at 561. And, in certain contexts, commonality and typicality requirements merge—if the representative parties' claims and defenses are typical, it is just as likely that the claims are common to

those in the rest of the defendant class. *Thurman*, 2013 S.D. 63, ¶ 17, 836 N.W.2d at 619; *Trapp*, 390 N.W.2d at 561. Commonality and typicality "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named" parties' claims and defenses and the class's claims and defenses "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5, 131 S. Ct. at 2551 n.5 (quoting *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 2370 n.13, 72 L. Ed. 2d 740 (1982)).

[¶23.] Here, the State's interest—a declaration that the waters overlying the Landowners' property are open for use by the public for recreational purposes—will also advance the interests of the absent class members—a declaration that the public can use the waters overlying the Landowners' property for recreational purposes. And, as the court found, the resolution of the case does "not depend upon the identities of the representative parties"—"[t]he same nature and quantum of proof regarding the defenses asserted by the named representative in this case are applicable to all defendants."

**4. Adequacy of Representation**

[¶24.] Whether the representative parties can fairly and adequately represent the interests of the class depends on two factors: (1) the quality and experience of counsel, such that counsel is generally able to conduct the proposed litigation, and (2) whether the class representative has interests antagonistic to those of the class. *Thurman*, 2013 S.D. 63, ¶ 17, 836 N.W.2d at 619; *Trapp*, 390

N.W.2d at 562.  The State does not question the quality and experience of counsel.  Instead, it avers that the Attorney General's Office is not generally able to conduct the proposed litigation because the Attorney General is not authorized to represent private citizens, let alone private citizens of another state.  The State also contends that Secretary Hepler is not an appropriate class representative because he does not share the same interests as the members of the class.

[¶25.]        SDCL 1-11-1(1) and (2) authorizes the Attorney General to "appear for the state and prosecute and defend all actions and proceedings, civil or criminal, in the Supreme Court, in which the state shall be interested as a party" and "to appear for the state and prosecute or defend, in any court or before any officer, any cause or matter, civil or criminal, in which the state may be a party or interested[.]"  The Attorney General, however, "shall not actively engage in the private practice of law."  SDCL 1-11-1.1.  Assistant attorneys general "shall have the same power and authority as the attorney general[.]"  SDCL 1-11-4.

[¶26.]        The Landowners' class action seeks to prevent the public from using the waters and ice overlying the Landowners' private property and enjoin the State defendants from facilitating the public's access absent legislative authorization.  The class no doubt includes private defendants but resolution of the proposed litigation does not implicate the legality of any private person's actions.  This case concerns the interests of the public at large, and, in defending the action, the Attorney General's Office is pursuing a matter in which the State is both a "party" and "interested."  *See* SDCL 1-11-1(2).  The Attorney General is not engaging in the private practice of law.

-13-

[¶27.]    We also conclude that Secretary Hepler is an appropriate member of the class as the class representative. "The appropriate test for determining whether the interests of the class representatives and other members of the class are antagonistic is whether or not those interests may be deemed coextensive; a total identity of interests is not required." *In re Tetracycline Cases*, 107 F.R.D. 719, 730 (W.D. Mo. 1985); *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) ("perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable"). GF&P, via Secretary Hepler, is charged with conserving, protecting, and managing the State's game and fish and land and water for recreational purposes. SDCL 41-3-1; SDCL 41-2-38. The public has an interest in using the water and ice for recreational purposes. The public's interests are compatible with GF&P's interests, via Secretary Hepler.

### B.  Rule 23(b)(1) Elements

[¶28.]    There is no dispute that a court may certify a defendant class under Rule 23(b)(1). SDCL 15-6-23(b). Rule 23(b)(1) refers to "actions by *or against* individual members[.]" (Emphasis added.) But this Court has not before examined the certification of a defendant class. On appeal, the State does not identify why the circuit court erred when it concluded that certification was proper under Rule 23(b)(1). In a footnote, the State offers a general statement that, because the Landowners "did not satisfy SDCL 15-6-23(a), and such satisfaction is a prerequisite for complying with (b), the circuit court additionally erred in finding that Plaintiffs met the requirements of SDCL 15-6-23(b)." The Landowners respond

that the State waived the issue for our review by not specifically addressing it. We agree. It is well-settled that the failure to brief an issue and support an argument with authority waives the right to have this Court review it. *Daily v. City of Sioux Falls*, 2011 S.D. 48, ¶ 10 n.6, 802 N.W.2d 905, 910 n.6; *Centrol, Inc. v. Morrow*, 489 N.W.2d 890, 893-94 (S.D. 1992). The circuit court did not err when it certified the defendant class in this case.

### 2. Declaratory Ruling

[¶29.] The State asserts the circuit court erred when it declared that, absent legislative authorization or permission from the Landowners, the public cannot use the non-meandered waters overlying the Landowners' private property for recreational purposes. The State relies on the Legislature's broad policy that the public has a right to use South Dakota's waters and that recreation is a beneficial use of water in this State. In response, the Landowners argue that *Parks* controls and, until the Legislature specifically authorizes recreational use, the public may not use the non-meandered waters overlying their property for recreational purposes. "This Court reviews declaratory judgments as we do any other order, judgment, or decree, giving no deference to a circuit court's conclusions of law under the de novo standard of review." *In re Pooled Advocate Tr.*, 2012 S.D. 24, ¶ 20, 813 N.W.2d 130, 138 (quoting *Fraternal Order Eagles No. 2421 v. Hasse*, 2000 S.D. 139, ¶ 8, 618 N.W.2d 735, 737).

[¶30.] In *Parks*, we examined our existing laws and recognized that GF&P and the Department of Environmental and Natural Resources have authority to manage the public waters in this State, including the non-meandered waters held in

trust. 2004 S.D. 27, ¶¶ 43-46, 676 N.W.2d at 837-39. But we said, "In abolishing private ownership of 'standing water,' the Legislature did not necessarily intend that such waters would become open for recreation." *Id.* ¶ 50. We noted that use of non-meandered waters for recreational purposes *may* be a beneficial use. *Id.* ¶¶ 50-53. But "[d]ecisions on beneficial use belong ultimately to the Legislature." *Id.* ¶ 51. "The Legislature may conclude that the public expenditure of money for services and infrastructure to support recreational uses may not be wisely spent, in view of the inevitable reality that these waters will diminish, and perhaps disappear, in the near future." *Id.* ¶ 52.

[¶31.] Since our decision in *Parks*, the Legislature has not decided these questions. In 2006, 2013, and 2014, GF&P sought specific legislation governing what recreational use may be made of these waters and attempted to enact legislation clarifying the meaning of "beneficial use" in the Water Resources Act. But the Legislature enacted no legislation. H.B. 1096; H.B. 1135; S.B. 169. Also, in 2004, GF&P asked the Water Management Board to promulgate a rule to allow the general public to use water or ice overlying private lands for recreational purposes. The Board rejected the proposed rule.

[¶32.] Similar to one argument advanced in *Parks*, the State in this case asks us to declare that the public trust doctrine includes recreational use. Yet, in *Parks*, we specifically examined whether the public trust doctrine includes the right to use non-meandered waters for recreation. We noted that other "states have recognized that the public trust extends to recreational use of public waters[.]" *Id.* ¶¶ 38-40, ¶ 47 (citing cases from other jurisdictions). We, however, declined to follow suit

because, "[i]n abolishing private ownership of 'standing water', the Legislature did not necessarily intend that such waters would become open for recreation." *Id.* ¶ 50.

[¶33.]     Today, we adhere to our position in *Parks*. "[I]t is not for us now to proclaim the highest and best use of these public waters in the interests of the 'general health, welfare and safety of the people.'" *Id.* ¶ 51 (quoting SDCL 46A-1-10). Under SDCL 46-1-2, "the state shall determine in what way the water of the state, both surface and underground, should be developed for the greatest public benefit." As we said in *Parks*, "[i]t is ultimately up to the Legislature to decide how these waters are to be beneficially used in the public interest." 2004 S.D. 27, ¶ 53, 676 N.W.2d at 841. Since *Parks*, the Legislature has not decided the question. The Legislature has not declared that the public's right to use the waters of the State includes the right to use the waters for recreational purposes. Nor has the Legislature declared that the public must obtain permission from private landowners such that private landowners have a right in the water superior to the general public. Because the question remains open, and consistent with our position in *Parks*, we affirm the circuit court's decision to grant declaratory relief. But we remand for the circuit court to modify the language of relief to provide:

> (a) Pursuant to *Parks v. Cooper*, 2004 S.D. 27, 676 N.W.2d 823 and SDCL 46-1-2, the Legislature must determine whether members of the general public may enter or use any of the water or ice located on the Plaintiffs' private property for any recreational use such as hunting or fishing. Currently, there is no such legislative authorization.

### 3. Injunctive Relief

[¶34.] The State contends that the circuit court erred when it issued an injunction conditioning the public's use of the water and ice overlying the Landowners' property on "permission from the landowner." The State claims the Landowners have no protectable right in the public water to warrant an injunction under SDCL 21-8-14. It argues that the State, not the Landowners, "retains the right to use, control, and develop the water in these lakes as a separate asset in trust for the public." The State also claims that injunctive relief was unwarranted because (1) the Landowners have a remedy against any alleged trespasser individually, (2) the State defendants did not cause any alleged damage, (3) the State defendants have not acted in bad faith, and (4) the Landowners presented only conclusory evidence that an injunction was necessary to prevent multiple judicial proceedings.

[¶35.] "[T]he question whether an injunction is statutorily authorized is reviewed de novo, and the court's subsequent decision to grant or deny the injunction is reviewed for an abuse of discretion." *Magner v. Brinkman*, 2016 S.D. 50, ¶ 19, 883 N.W.2d 74, 83. SDCL 21-8-14 authorizes permanent injunctions "to prevent the breach of an obligation existing in favor of the applicant" in the following limited circumstances:

> (1) Where pecuniary compensation would not afford adequate relief;
>
> (2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;
>
> (3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or
>
> (4) Where the obligation arises from a trust.

The court also considers certain guiding factors:

(1) Did the party to be enjoined cause the damage? (2) Would irreparable harm result without the injunction because of lack of an adequate and complete remedy at law? (3) Is the party to be enjoined acting in bad faith or is the injury-causing behavior an innocent mistake? (4) In balancing the equities, is the hardship to be suffered by the enjoined party . . . disproportionate to the . . . benefit to be gained by the injured party?

*Strong v. Atlas Hydraulics, Inc.*, 2014 S.D. 69, ¶ 11, 855 N.W.2d 133, 138 (quoting *New Leaf, LLC v. FD Dev. of Black Hawk LLC*, 2010 S.D. 100, ¶ 15, 793 N.W.2d 32, 35).

[¶36.] The circuit court determined that any one of the first three reasons under SDCL 21-8-14 justified imposition of a permanent injunction. In particular, the court explained that restraint was necessary to prevent multiple judicial proceedings in light of the fact the Legislature has not acted since *Parks* was decided. In review of the guiding factors, the court recognized that the State had not acted in bad faith. The court nonetheless concluded that the other factors weighed in favor of an injunction.

[¶37.] We first note that *Parks* does not stand for the proposition that a circuit court has no authority to enter an injunction. We said that the circuit court had erred when it granted the injunction *on the basis* that the subject waters were private property. 2004 S.D. 27, ¶ 51, 676 N.W.2d at 841. Here, the circuit court did not declare the waters private. Nor did the court enjoin the State from exercising control over the waters held in public trust. Instead, the court enjoined the State defendants from facilitating access for members of the public to use the water or ice overlying the Landowners' property for recreational purposes "in the absence of permission from the landowner or authorization from the Legislature." And the

court enjoined the State and class defendants and members of the public from entering or using the waters or ice for recreational purposes "without permission of the landowner."

[¶38.]    According to the State, it "flies in the face of the public trust doctrine" to give the Landowners the power to dictate the use of these waters. The State is correct that the Landowners do not have an exclusive right to control the waters overlying their private land—all waters in the State are public property. *See Parks*, 2004 S.D. 27, ¶ 49, 676 N.W.2d at 839. But, as we said in *Parks*, the State holds these waters in trust *for the public* and controls these waters for the benefit of the public. Therefore, the Legislature (not this Court, not GF&P, and not the public) must "decide how these waters are to be beneficially used in the public interest." *See id.* ¶ 53.

[¶39.]    This raises a complicated question: If neither a landowner nor the public has an exclusive right to control the waters and the entity responsible for controlling the waters has not acted, did the circuit court have statutory authority to issue an injunction that prevents the public from using the waters for recreational purposes? Under SDCL 21-8-14, a court may only grant a permanent injunction "to prevent the breach of an obligation existing in favor of the applicant[.]" *Strong*, 2014 S.D. 69, ¶ 11, 855 N.W.2d at 138. So we must decide whether the Landowners have a right protectable by SDCL 21-8-14.

[¶40.]    We begin with the premise that water rights are correlative in nature with no one person or entity holding the entire bundle of sticks. *See generally Parks*, 2004 S.D. 27, 676 N.W.2d 823; *Belle Fourche Irrigation Dist. v. Smiley*, 84

S.D. 701, 176 N.W.2d 239 (1970); *Knight v. Grimes*, 80 S.D. 517, 523, 127 N.W.2d 708, 711 (1964). The State holds the waters in trust for the benefit of the public but not as an owner or proprietor. *Parks*, 2004 S.D. 27, ¶ 46, 676 N.W.2d at 838. The people of the State own the waters but not in the exclusive or absolute sense. The Landowners, on the other hand, as riparian owners, possess a right to use and enjoy the waters, including "for all useful purposes to which it may be applied[.]" *See id.* ¶ 30 (quoting *St. Germain Irrigating Co. v. Hawthorn Ditch Co.*, 32 S.D. 260, 143 N.W. 124, 126-27 (1913) (discussing the extent of a riparian owner's rights)). The Landowners' rights, however, are qualified by State law and by the public's superior right to use the waters for public purposes. *Id.* ¶¶ 43-44.

[¶41.] But the Legislature has not yet said that "public purposes" includes a right to use this State's non-meandered waters for recreational purposes. So until the Legislature acts, neither the public nor the Landowners have a superior right to use the waters and ice overlying the Landowners' private property. Similarly, until the Legislature acts, the GF&P and other State defendants cannot facilitate access for members of the public to enter or use the waters and ice overlying the Landowners' private property for recreational purposes.

[¶42.] With these principles in mind, in the absence of legislative authorization pursuant to *Parks*, and to avoid repeated judicial proceedings, the circuit court had the authority to issue an injunction. But the language of the circuit court's injunction is too broad. Ultimately, until the Legislature acts, neither the Landowners nor the general public have an "obligation [i.e. a right] existing in [their] favor" that is superior and enforceable by injunction under SDCL 21-8-14.

#27885

We, therefore, remand for the circuit court to strike subsection (a) and modify the language of subsection (b) to provide:

> Prohibiting the Department of Game, Fish and Parks and other Defendants from facilitating access for members of the public to enter or use the bodies of water or ice on the Plaintiffs' private property for any recreational purpose, including hunting and fishing, in the absence of authorization from the Legislature.

[¶43.] Affirmed in part, reversed in part, and remanded in part.

[¶44.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON and KERN, Justices, concur.